## MAFCOTE INDUSTRIES, INC. *v.* GANNICOTT LIMITED
### (AC 19167)

Zarella, Pellegrino and O'Connell, Js.

Argued June 13—officially released October 10, 2000

*David S. Doyle*, for the appellant (plaintiff).

*Myles F. McDonald, Jr.*, for the appellee (defendant).

*Opinion*

ZARELLA, J. The plaintiff appeals from the judgment of the trial court rendered in favor of the defendant. The plaintiff claims that the court improperly (1) found that there could not be a breach of the implied warranty of fitness for a particular purpose in the absence of an express warranty and (2) failed to enforce the agreement of the parties. We affirm the judgment of the trial court.

The court found the following facts. The plaintiff, Mafcote Industries, Inc., is located in Norwalk and produces various types of paper products. The defendant, Gannicott Limited, is a manufacturer of equipment located in Ontario, Canada. The plaintiff purchased a "sheeter" machine from the defendant pursuant to a purchase order dated January 12, 1993. The plaintiff paid the purchase price of $256,140 in full. The purchase order contained a warranty that covered "all Line parts and the proper functioning of the machine for 1 year or 2000 hours, whichever [is] less, after completed installation." The machine was manufactured specifically for the plaintiff according to the plaintiff's specifications.

In April, 1993, the plaintiff's plant manager, Peter Rohde, a mechanical engineer, inspected the machine at the defendant's plant in Canada. Rohde witnessed the machine's operation and reported to the plaintiff's president that he was "very pleased and impressed with the workmanship and making of [the] product." Additionally, he reported that the machine "ran up to 500 per minute." The machine was accepted and delivery and installation were accomplished on May 13, 1993. The equipment was operational by the middle of June, 1993. In July, 1993, two gears were determined to be defective and were replaced as provided for under the express warranty provision of the contract.

Thereafter, the plaintiff purchased another piece of equipment, referred to as an "overwrapper," which was manufactured by Norco Packaging Machinery, Inc., and installed in January, 1994. The overwrapper was to work in conjunction with the sheeter.[1] There had been no

---

[1] The terms "line," "machine" and "sheeter" have been used by the plaintiff interchangeably. In its amended complaint, the plaintiff claims to have purchased a "Roll/Sheet Converting Line" (line) from the defendant. The purchase order ordering the equipment from the defendant warrants the line's parts for 2000 hours or 1 year, whichever occurs first. The plaintiff also refers to the equipment manufactured by the defendant as the "machine" or "sheeter." Also, the plaintiff, at times, refers to the line to include the

expression of any dissatisfaction with the sheeter to this point. The first indication of a problem came in a February 28, 1994 letter from the plaintiff's president to the defendant, some nine months after installation. In the letter, the plaintiff expressed dissatisfaction with the sheeter jamming at speeds of 500 feet per minute and with the fact that the machine could not be operated by one person if that same person was responsible for the operation of the overwrapper as well. On February 28, 1994, the plaintiff also wrote to Norco indicating that it was experiencing jams of the overwrapper that caused "the line to go down for extended periods of time."

On May 9, 1996, by amended complaint, the plaintiff alleged, in the first count, a breach of express warranties with regard to the operating speed of the machine and the number of operators necessary. In the second count, the plaintiff alleged a breach of the implied warranty of merchantability. In the third count, the plaintiff alleged a breach of any implied warranty of fitness for a particular purpose. The trial court found that there was no breach of either express or implied warranties.

I

The plaintiff first claims that "the trial court [improperly] determined that in the absence of an express warranty, [the] plaintiff could not prevail on its claim that [the] defendant had breached an implied warranty of fitness for a particular purpose."

"On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logi-

equipment subsequently purchased from Norco. In this decision, we use the terms sheeter, machine and line to mean the equipment purchased from the defendant only.

cally correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citation omitted.) *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

The plaintiff claimed that the defendant expressly warranted that the machine could produce at speeds of up to 500 feet per minute and that one person alone could operate the machine. The court found, however, that the purchase order did not contain any such express warranties and, thus, that the plaintiff failed to show that the defendant breached an express warranty. The plaintiff also claimed that the defendant breached an implied warranty of fitness for a particular purpose. In concluding that the plaintiff failed to prove that claim, the court stated that "if there are no express warranties regarding production at a certain rate or the operation of the sheeter by one [person], it is difficult to discern why there could be breaches of any implied warranties. The machine did convert rolls of paper to sheets of paper, which was its purpose, and is still in operation in the Louisville plant."

The court's decision must be read and construed in its entirety. The court stated that the purchase order referred to a "maximum" speed of 500 feet per minute, not that it could produce at that rate. Taken in that context, it is reasonable that the court refused to find the existence of an implied warranty that contradicted the express representation contained in the purchase order. Similarly, the court found that there was a representation in the purchase order that the "Line" could be operated by a single person. In light of this express representation, the court did not find that there was an

implied warranty that the overwrapper and the sheeter together could be operated by a single operator. Thus, reading the court's decision as a whole, we conclude that the court properly found that there was no breach of the implied warranty of fitness for a particular purpose.

## II

The plaintiff next claims that the court failed to enforce the agreement of the parties that stated that "the machine would function properly for one year or 2000 hours, whichever occurred first."

The plaintiff claims that the court improperly determined that it had waited too long to notify the defendant that the goods were nonconforming. The plaintiff, in effect, claims that the court substituted its terms in lieu of the terms contained in the written contract. Specifically, the plaintiff claims that the court's finding, pursuant to General Statutes § 42a-2-607 (3), that the plaintiff failed to give notice of the alleged breach within a reasonable time because the plaintiff did not notify the defendant until nine months after the goods were accepted and, thus, that the plaintiff's claim for breach of warranty was barred was a modification of the twelve month warranty in the contract. We need not address this claim in light of the determination in part I of this opinion that the court properly found that there was no breach of any express or implied warranties.

The judgment is affirmed.

In this opinion the other judges concurred.